# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

KC PROCESSING COMPANY, LLC,     )
                                     )
      Plaintiff,                 )
                                     )
      v.                            )            No. 4:25-CV-00059-DGK
                                     )
IAN MARSHALL, et al.,             )
                                     )
      Defendants.             )

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This case arises out of a business dispute between a Missouri CBD manufacturing company and industrial hemp farmers in Colorado. Plaintiff KC Processing Company, LLC ("KCP"), brings claims for breach of contract, unjust enrichment, injunctive relief, specific performance, conversion, replevin, negligent and fraudulent misrepresentation, and negligence against Defendants Ian Marshall ("Marshall"), Ian Marshall, LLC, Kirk Benjamin, LLC ("KB"), Thunderstruck Hops, Inc. ("Thunderstruck"), and Christopher Pfifer ("Pfifer") for their alleged failure to provide KCP with the hemp biomass due to it under the parties' Hemp Farm Service Agreement ("the Agreement").

Now before the Court are Defendants Thunderstruck and Pfifer's motion for summary judgment on all claims, ECF No. 55, and Defendants Ian Marshall, LLC,[1] KB, and Marshall's motion for summary judgment on all claims, ECF No. 57. Finding there is no genuine dispute as to any material fact and all Defendants are entitled to judgment as a matter of law, the Court GRANTS the motions.

---

[1] The parties do not dispute that "Ian Marshall, LLC," is a nonexistent entity. This fact plays no role in the Court's analysis. Accordingly, the Court disregards any reference in the record to "Ian Marshall, LLC," as KCP suggests, Am. Compl. ¶ 4, ECF No. 32, and understands any such references to refer to Ian Marshall individually.

## Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). But the nonmoving party "cannot simply rest on the allegations in [his] complaint." *Sherman v. Collins*, 158 F.4th 904, 907 (8th Cir. 2025). "Instead, he must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 770 (8th Cir. 2016) (alterations in original) (citations omitted). "The moving party is entitled to a judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. And the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

## Undisputed Material Facts

Before laying out the facts of this case, the Court notes that the record and briefing are deficient in a significant respect. This is a case about hemp production where questions concerning the science of hemp cultivation are central to KCP's case against Defendants. But

2

KCP offers almost no factual information and no expert testimony about hemp farming in general or hemp farming in the region of Olathe, Colorado, where the hemp at issue in this case was grown, in particular. What little factual information there is—aside from Colorado-wide average yield statistics for 2021–2023 in the amended complaint and comments in KCP's depositions (mostly concerning CBD oil extraction)—has largely been provided by Defendants. But responsibility for the development of this factual record falls on KCP.

That said, the material, undisputed facts are as follows.[2] KCP is a manufacturing company located in Grandview, Missouri, that extracts CBD crude oil from industrial hemp biomass. KCP enters grow contracts with hemp farmers whereby KCP supplies hemp seed and capital to fund hemp-growing operations and the farmers cultivate and harvest the hemp crop and then sell the hemp biomass to KCP for its CBD crude oil extraction operation. KCP's founders Troy Renkemeyer and Scot Crader disclaimed any knowledge of hemp farming in their depositions.

Thunderstruck is a Colorado corporation with its principal place of business in Olathe, Colorado, where it owns, operates, and maintains a hemp farm ("the Farm"). Thunderstruck supplies farming equipment for hemp cultivation and storage facilities for the harvested hemp crop. Pfifer is the sole owner of Thunderstruck. KB is a Colorado limited liability company. Pfifer is KB's sole member.

Ian Marshall is an industrial hemp farmer with fifteen years of farming experience and ten years of hemp farming experience. He manages the Farm. Marshall and Pfifer have a full-time

---

[2] The Court has limited the facts to those that are undisputed and *material* to the pending summary judgment motion. *See* Fed. R. Civ. P. 56(c) (emphasis added); L.R. 56.1(a). The Court has excluded legal conclusions, argument presented as fact, proposed facts which are duplicative of other proposed facts, and proposed facts which are not admitted and not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has included proposed material facts which have been improperly controverted. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

employee and contractors to process and load hemp biomass. The full-time employee is employed by either Thunderstruck or KB. When Marshall is away from the Farm, Pfifer manages the work there. Marshall receives 30% of the harvest as compensation on top of a monthly salary. In previous hemp-growing seasons, Marshall's biomass production has ranged from total crop failure to a yield of 4,000 pounds per acre, with an estimated average production across seasons of 2,500 pounds per acre.

August and September are the most vital months for hemp flower production, and yield can decline drastically if conditions are not adequate. The harvest of hemp in Colorado typically begins the last week of September or the first week of October.

Colorado law requires industrial hemp growers to be licensed by the State. Pfifer holds a license to grow industrial hemp at the Farm through Thunderstruck. Marshall does not individually hold a license to grow industrial hemp.

On May 3, 2024, KCP General Manager Scott Crader and Marshall signed the Agreement. As relevant to the current motions for summary judgment, the Agreement required KCP to

(1) give Marshall a deposit of 700,000 seeds of Cherry Blossom genetics and $400,000;

(2) ship the seeds to Marshall no later than May 7, 2024;

(3) wire $10,000 prior to May 3, 2024, $190,000 by May 17, 2024, and the remaining $200,000 by August 1, 2024; and

(4) purchase the hemp biomass that meets the Agreement's specifications for a purchase price according to the biomass's potency.

The Agreement required Marshall to

(1) have available 250 acres of farmland with: (i) acceptable soil for growing, (ii) an adequate water supply, and (iii) adequate management and farming capacity to produce hemp that meets the specifications set forth in the Agreement on the acres contracted;

4

(2) have all registrations, permits, and licenses necessary for the production of hemp biomass;

(3) maintain insurance sufficient to cover the hemp crop;

(4) sell 100% of the biomass cultivated at the Farm to KCP;

(5) timely cooperate with, comply with, and implement KCP's reasonable requests consistent with generally accepted farming practices, with regard to all activities contemplated under the Agreement and grant KCP free and easy access to the Farm to inspect, evaluate, and monitor the progress and conditions of the Biomass during growth;

(6) sell to KCP approximately 10,000 pounds of industrial hemp biomass harvested in the fall of 2023 at a price of $3.50 per pound; and

(7) return any unused portion of the deposit if he fails to provide a sufficient amount of hemp biomass meeting the specifications set forth in the Agreement to utilize all of the deposit.

The Agreement also contained an "Entire Agreement" clause that required the parties to execute any modification to the Agreement in writing and sign it.

KCP paid the first installment of $10,000, on May 3, 2024, and the second installment of $190,000, on May 17, 2024. Defendants paid $110,000 on two pre-existing loans from these first two installments, leaving $90,000 at that point for the grow operation. Fertilizer was then applied to the Farm in June and July.

When KCP failed to pay the final installment of $200,000 by August 1, 2024, Marshall sent a letter through counsel to KCP on August 23, 2024, stating that KCP's failure to pay the rest of the deposit constituted a material breach of the Agreement and, invoking his rights under the Uniform Commercial Code, threatened to sell the hemp crop to a third party. On September 17, 2024, KCP responded, "We have not paid the 2nd [sic] deposit yet because Ian [Marshall] has not allowed us to see the crop." KCP founder Renkemeyer testified that KCP had tried unsuccessfully to arrange an inspection of the Farm before August 1, 2024, stating that Defendants eventually

5

became non-responsive. However, KCP was never explicitly denied access to the Farm for inspection. Marshall testified that he had talks about an inspection with J.C. Martinez, KCP's broker, in the beginning of July but suggested an inspection in August when the plants would be in full bloom.

The parties finally agreed that KCP would pay the remaining $200,000 of the deposit once it had inspected the Farm to its satisfaction. The inspection occurred on October 16, 2024. KCP was satisfied with the progress of the crop, taking photographs and videos that it thought showed the harvest would likely yield more than 500,000 pounds of biomass. Marshall estimated that the Farm would yield 1,500 pounds of biomass per acre, or a total estimated yield of 375,000 pounds. KCP paid the final $200,000 on October 21, 2024. All three deposit payments were made to Thunderstruck's bank account. The Farm sat untouched from August to harvest because Defendants had run out of money by the August 1, 2024, $200,000-payment deadline. Defendants applied no fertilizer and did no weeding after they received the rest of the deposit in October, because it was already the end of harvest.

Since December 2024, Defendants have shipped KCP 49,698 pounds of biomass from the 2024 hemp crop and 37,679 pounds of biomass from the 2023 hemp crop. On January 18, 2025, Marshall informed KCP that he was out of hemp biomass.

**Discussion**

The Agreement stipulates, and the parties do not dispute, that Missouri substantive law controls. The briefs for the two motions for summary judgment are identical in all material respects, so the Court will address the arguments as applying to both motions.

As a preliminary matter, Thunderstruck, Pfifer, and KB argue they are not parties to the Agreement and therefore cannot be liable for any of the claims in KCP's amended complaint.

6

KCP argues Thunderstruck, Pfifer, and KB formed a de facto partnership with Marshall such that Marshall's action of entering the Agreement with KCP binds them as members of the partnership.

KCP is correct. "Under Missouri law, '[a] "partnership" is an association of two or more persons to carry on as co-owners a business for profit.'" *Woods v. Wills*, 400 F. Supp. 2d 1145, 1185 (E.D. Mo. 2005) (quoting Mo. Rev. Stat. § 358.060). "A partnership agreement may be implied from the parties' acts and conduct." *Downey v. McKee*, 218 S.W.3d 492, 499 (Mo. Ct. App. 2007). "[A] partnership can be established . . . by implication . . . where there is clear, cogent and convincing evidence that the purported partners have made a definite and specific agreement. . . . Indicia of a partnership relationship includes a right to a voice in management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors." *Woods*, 400 F. Supp. 2d at 1185 (quoting *Morrison v. Labor and Indus. Relations Comm'n,* 23 S.W.3d 902, 909 (Mo. Ct. App. 2000); *see also* Mo. Rev. Stat. § 358.070.4 ("The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business.").

There is ample evidence to show that Defendants are a de facto partnership: (1) Marshall signed the agreement representing that he had the adequate land and license for hemp production; (2) Pfifer's corporation Thunderstruck owns and maintains the land and has the hemp license; (3) Marshall manages the Farm and receives 30% of the harvest on top of a monthly salary; (4) when Marshall is away from the Farm, Pfifer manages it; and (5) payments from KCP went into Thunderstruck's bank account. This financial and managerial mixture leads the Court to conclude Defendants are a partnership. All Defendants are therefore bound by the Agreement. *See Birdsong v. Bydalek*, 953 S.W.2d 103, 122 (Mo. Ct. App. 1997) ("Every partner is an agent of the partnership for the purpose of its business, and the act of every partner . . . for apparently carrying

7

on in the usual way the business of the partnership binds the partnership.”).

### I. Defendants are entitled to summary judgment on the breach of contract claim (Count I).

"A claim of breach of contract requires four essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Mississippi Valley Equip. Co. v. Killian*, 728 S.W.3d 505, 510 (Mo. Ct. App. 2025) (citation and internal quotation marks omitted).

Defendants argue KCP cannot establish breach because either (1) Defendants' performance was excused under the Uniform Commercial Code ("UCC") for "failure of presupposed conditions," or (2) KCP was the first to breach the contract and therefore cannot recover under the common law. KCP argues the UCC does not apply to the Agreement because it is a service contract, not a contract for goods. KCP also argues there is a factual dispute as to whether Defendants were the first to breach the Agreement.

The Court does not need to decide if the Agreement is a contract for goods or services, because Defendants prevail under both theories. And since KCP only makes a substantive argument regarding the common law, the Court will address the common law standard.[3]

A party cannot pursue a claim for breach of contract if it "is the first to materially breach it." *Grisham v. Mission Bank*, 531 S.W.3d 522, 537 (Mo. Ct. App. 2017) (citation omitted). Defendants argue that KCP was the first to breach the contract when it failed to pay the final

---

[3] Under UCC § 2-615(a), "[d]elay in delivery or non-delivery in whole or in part by a seller who . . . [gives notice of non-delivery to the buyer] is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made." KCP makes no argument that Defendants' performance would not be excused under the UCC; it argues only that the UCC does not apply. Thus, if the UCC does apply, KCP has waived any argument against Defendants' position on this point. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

$200,000 of the deposit by August 1, 2024, as required by the Agreement, and it therefore cannot pursue a breach of contract claim. KCP argues there is a dispute of material fact as to whether it was the first to breach, because Defendants allegedly did not allow an inspection before August 1, 2026, and did not timely deliver the 10,000 pounds of biomass from the 2023 crop. KCP further argues even if it breached the Agreement by failing to pay, the parties agreed that KCP would pay the final $200,000 once it inspected the Farm.

Defendants are correct, and KCP's arguments fail. KCP offers no evidence that Defendants refused to allow KCP "free and easy access" to the Farm, as required by the Agreement. Marshall's apparent unavailability before August 1, 2024, did not render the Farm itself, which was owned by Thunderstruck, inaccessible. And the parties agree that KCP was never explicitly denied access to the Farm. Nor does the Agreement make payment of any part of the deposit contingent on an inspection. Moreover, the Agreement sets no definite date by which delivery of the 2023 biomass was due. KCP does not assert the Agreement is ambiguous about the 2023 biomass delivery, so any purported extrinsic statements between the parties on that point are not binding on the parties. *See Mobile Nat'l Dev. Co., LLC v. Spectrum Mid-Am.*, LLC, 705 S.W.3d 593, 600 (Mo. Ct. App. 2024) ("Where the language of the contract is unambiguous, the intent of the parties will be ascertained from the language of the contract alone and not from extrinsic or parole evidence of intent.") (citation omitted).

As to the parties' arrangement for inspection and payment, this arrangement neither modified the Agreement nor negated KCP's original breach of the Agreement. First, the Agreement's "Entire-Agreement" clause required all modifications to be executed in writing and signed by the parties, and KCP offers no evidence that this happened. And it is well-established under the common law in Missouri that any modification to a contract must be accompanied by

9

new consideration.[4]  *See, e.g.*, *Wilt v. Hammond*, 165 S.W. 362, 364 (Mo. Ct. App. 1914) ("It is well settled in this state that the terms of a contract cannot be modified or changed or new conditions added thereto without a new consideration, any more than could the original contract be valid without an original consideration.").  KCP gave no new consideration for the agreement to pay the contractually-required $200,000 only after it inspected the Farm.  It simply did in October 2024 what the Agreement obligated it to do—pay $200,000—by August 1, 2024.  And again, the Agreement does not make inspection a precondition for payment.  This inspection arrangement did not, therefore, become a part of the Agreement, even if the parties agreed to it. KCP was in breach of the Agreement, and this breach occurred before Defendants' breach, if any.[5] KCP cannot, therefore, pursue a breach of contract claim against them.

Accordingly, Defendants are entitled to summary judgment on KCP's breach of contract claim.

## II.  Defendants are entitled to summary judgment on the unjust enrichment claim (Count II).

"A claim for unjust enrichment has three elements: a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable." *Grisham v. Mission Bank*, 531 S.W.3d 522, 538 (Mo. Ct. App. 2017).  Defendants argue KCP cannot pursue an unjust enrichment claim because unjust enrichment claims only arise when there is no express contract, but Defendants and KCP had an express contract.  KCP argues that

_____

[4] KCP's argument on this might have some force under the UCC.  *See* § 2-209 ("An agreement modifying a contract within [UCC Article 2] needs no consideration to be binding.").  But KCP denies the UCC applies to the Agreement.

[5] The Court has addressed and resolved the arguments the parties have made on the breach of contract claim.  The Court further notes, however, that KCP has not shown that either the timing or the volume of Defendants' delivery of biomass was, in itself, a breach of the Agreement.

Defendants were unjustly enriched by the $400,000 KCP paid them when Defendants only provided a small amount of the expected hemp biomass.[6]

Defendants are correct. "It is a well-settled principle of law that implied contract claims [such as unjust enrichment] arise only where there is no express contract. Accordingly, a plaintiff cannot recover under an equitable theory when she has entered into an express contract for the very subject matter for which she seeks to recover." *Id.*, 538–39 (citation omitted). There is no dispute that the parties have an express contract, the Agreement. And KCP seeks to recover for the subject matter of the Agreement. KCP therefore cannot bring a claim for unjust enrichment as a matter of law, and Defendants are entitled to summary judgment on that claim.

### III. Defendants are entitled to summary judgment on the claims for injunctive relief (Count III), specific performance (Count IV), conversion (Count V), and replevin (Count VI).

Defendants argue these claims are premised on allegations that Defendants have either withheld biomass from KCP or sold it to third parties, but KCP has produced no evidence of this. KCP argues genuine issues of material fact exist for these claims.

Defendants are correct. In Count III, KCP seeks to enjoin Defendants from selling or transferring hemp biomass from the 2024 crop to third parties. In Count IV, KCP seeks Defendants' specific performance under the Agreement by providing KCP all biomass from the 2024 crop and refraining from selling or transferring biomass to third parties. Count V alleges Defendants are exercising control over the hemp crop and thereby depriving KCP of its possessory rights. And in Count VI, KCP seeks immediate possession of the hemp crop wrongfully withheld

---

[6] KCP also asserts that the dispute as to who the parties to the contract are raises an issue of fact concerning the availability of an unjust enrichment claim in the face of the Agreement. As explained above, the Court holds Defendants are a de facto partnership and therefore are all bound by the Agreement. There is no dispute of material fact on this issue. And because KCP cannot bring a claim for unjust enrichment under the facts of this case, the Court does not need to address this argument further.

by Defendants. KCP argues (1) Marshall's representations to KCP about Defendants' typical and recent production, (2) Defendants' threat to sell biomass to third parties in response to KCP's failure to pay the last $200,000 of the deposit, and (3) Defendants' higher production the following season could lead a reasonable jury to infer that Defendants either withheld biomass from KCP or sold it to third parties.

This is nothing "more than mere speculation, conjecture, or fantasy," *Grant*, 841 F.3d at 770, the kind of "metaphysical doubt" about material facts that cannot defeat a motion for summary judgment, *Matsushita*, 475 U.S. at 586. KCP has admitted it has no evidence that Defendants sold biomass to third parties during the Agreement period. And it offers no evidence that Defendants withheld biomass during the Agreement period. It offers only yield data from other crop years and the speculation that the low amount of biomass delivered to it must be due to Defendants' malfeasance. But offering positive evidence of these allegations would be KCP's burden at trial. Because KCP does not make a sufficient showing on that burden here, Defendants are entitled to summary judgment on KCP's claims for injunctive relief, specific performance, conversion, and replevin. *See Celotex*, 477 U.S. at 323.

IV. **Defendants are entitled to summary judgment on the claims for negligent misrepresentation (Count VII), fraudulent misrepresentation (Count VIII), and negligence (Count IX).**

Defendants argue KCP cannot recover for negligent or fraudulent misrepresentation because KCP has not shown any evidence that any false information conveyed by Defendants to KCP was due either to Defendants' failure to exercise reasonable care or to Defendants' knowledge of its falsity. KCP argues there are genuine disputes of material fact on these claims. As to negligence, Defendants argue KCP (1) is the proximate cause of its own injury and (2) has not offered expert testimony on hemp production for evidence of the relevant standard of care or the

cause of Defendants' poor hemp harvest. KCP offers no opposition to Defendants' arguments on negligence.

a. **The allegedly false information Defendants conveyed to KCP does not satisfy the elements for negligent misrepresentation.**

The elements of a negligent misrepresentation claim are: "(1) the speaker provided information in the course of his or her business; (2) the information was false as a result of the speaker's failure to exercise reasonable care; (3) the speaker intentionally provided the information for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information, and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Blevins v. Am. Fam. Mut. Ins. Co.*, 423 S.W.3d 837, 842 (Mo. Ct. App. 2014).

KCP alleges the following misrepresentations: (1) Defendants' crop would yield a minimum of 1,500 pounds per acre, for a total of 375,000 pounds of hemp; (2) all crops harvested would be supplied to KCP; (3) Defendants only produced 50,000 pounds of hemp; (4) Defendants would supply additional loads of hemp in January 2025; (5) delays in shipping were due to personal issues and would resume shortly. KCP adds the following allegations of misrepresentation in its opposition briefs: (6) shipping of biomass from the 2023 crop would happen shortly when it actually took five months; and (7) Defendants would use the $400,000 deposit to grow and cultivate hemp biomass using generally accepted farming practices.

KCP offers no evidence that the alleged falsity of any of these statements was due to Defendants' failure to exercise reasonable care. Concerning Defendants' expected biomass production, which is the heart of this case, the parties do not dispute that this was an estimate, and the facts put forward—Defendants' yields before and after 2024—tend to show that Marshall's estimates about the 2024 yield were reasonable and not the result of failure to exercise reasonable

13

care.  And, as explained above, KCP offers no evidence that Defendants have not supplied all of the 2024 crop to KCP.  Neither has KCP shown any pecuniary loss resulting from the allegedly late shipment of the 2023 biomass.  As to the use of the $400,000, KCP does not show in the record where Defendants said they would use the $400,000 to grow and cultivate hemp biomass to the exclusion of paying debts incurred from their ongoing hemp-production business.

### b.  KCP has not shown that Defendants knew any information Defendants conveyed to it was false or that Defendants intended KCP to rely upon the falsity.

The elements of a fraudulent misrepresentation claim are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury."  *Bohac v. Walsh*, 223 S.W.3d 858, 862–63 (Mo. Ct. App. 2007).

KCP alleges the same information here as in its negligent misrepresentation claim, and its arguments fare no better.   KCP offers no evidence that Defendants knew the information was false and intended KCP to rely upon the falsity.   Indeed, the evidence shows both Defendants and KCP reasonably expected a good yield as late as the October 17, 2024, inspection.  And again, KCP offers no evidence that Defendants have not supplied all of the 2024 crop to KCP, has shown no injury from the allegedly late shipment of the 2023 biomass, and has not shown in the record where Defendants said they would use the $400,000 to grow and cultivate hemp biomass to the exclusion of paying debts incurred from their ongoing hemp-production business.

### c.  KCP has waived its negligence claim.

KCP has not opposed Defendants' arguments for summary judgment on its negligence claim.  Consequently, those arguments are waived.  *See Satcher v. Univ. of Arkansas at Pine*

14

*Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). And even if they were not, KCP has not shown evidence of the relevant standard of care or causality from which a reasonable jury could conclude that any breach of duty by Defendants proximately caused the low yield. The complex variability of industrial agriculture—indeed, Defendants' previous yields ranged from total failure to 4,000 pounds per acre—requires expert testimony for lay finders of fact to reasonably find in KCP's favor. *See Stone v. Missouri Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 21 (Mo. 2011) ("When a fact at issue is so technical or complex that no fact finder could resolve the issue without expert testimony, expert testimony is necessary and, therefore, required.") (citation and internal quotation marks omitted). Such evidence could include, among other things, how hemp seeds for CBD production are developed, the proper time for planting hemp in the part of Colorado where the Farm was located, water requirements, when and how fertilizer should be applied, factors affecting germination and the development of the part of the plant from which crude oil is extracted, potential causes for crop failure, and if and why a hemp crop can look healthy—as the 2024 crop apparently did—but yield such little usable biomass. And there are surely other facts an expert could give to help the trier of fact. But KCP has provided none of this, even though such facts are central to its case.

For these reasons, Defendants are entitled to summary judgment on KCP's claims for negligent misrepresentation, fraudulent misrepresentation, and negligence.

### Conclusion

For the reasons set forth above, Defendants' motions for summary judgment, ECF Nos. 55 and 57, are GRANTED.

**IT IS SO ORDERED.**

15

Date: July 20, 2026        /s/ Greg Kays
                                                 GREG KAYS, JUDGE
                                                 UNITED STATES DISTRICT COURT